Bradley J. Bondi*
**PAUL HASTINGS LLP**
2050 M Street NW
Washington, DC 20036
Telephone: (202) 551-1700
bradbondi@paulhastings.com
*pro hac vice* forthcoming

Matthew P. Previn*
**PAUL HASTINGS LLP**
200 Park Avenue
New York, NY 10166
Telephone: (212) 318-6049
matthewprevin@paulhastings.com
*pro hac vice* forthcoming

Benson L. Hathaway, Jr. (Bar No. 4219)
Alyssa Nielsen (Bar No. 18066)
**KIRTON McCONKIE**
50 East South Temple, 4th Floor
P.O. Box 45120
Salt Lake City, Utah 84145-0120
Telephone: (801) 328-3600
bhathawa@kmclaw.com
anielsen@kmclaw.com

*Counsel for Defendants Acima Digital, LLC and Acima Holdings, LLC*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>        Plaintiff,<br><br>v.<br><br>ACIMA HOLDINGS, LLC, ACIMA DIGITAL, LLC (F/K/A ACIMA CREDIT, LLC, D/B/A ACIMA LEASING), and AARON ALLRED,<br>        Defendants. | **DEFENDANTS ACIMA DIGITAL, LLC AND ACIMA HOLDINGS, LLC'S MOTION TO TRANSFER OR, IN THE ALTERNATIVE, TO STAY**<br><br>Case No. 2:24-CV-00525-DBB |

4887-4197-6805.v1

## **INTRODUCTION, RELIEF REQUESTED, AND GROUNDS THEREFOR**

The Consumer Financial Protection Bureau ("CFPB") filed this action (the "Utah Action") ***after*** Acima Digital, LLC and Acima Holdings, LLC (collectively, "Acima") sued the CFPB in the Eastern District of Texas. *See Acima Digital, LLC, et al. v. CFPB* (E.D. Tex., Case No. 24-C-00662) (the "Texas Action"). In Texas, Acima seeks a declaratory judgment that the CFPB lacks statutory and constitutional authority over the ***same conduct*** alleged in the Utah Action, and the legal issues are the same. The parties in both lawsuits are the same, and venue is proper in Texas.

Under the "first-to-file" doctrine, this Court should transfer this action to the Eastern District of Texas for determination of which venue is best-suited to adjudicate the CFPB's challenge. All the relevant factors—chronology of the actions, similarity of the parties, and similarity of the issues—favor application of the first-to-file rule to the Texas and Utah Actions. Importantly, the Tenth Circuit has signaled a strong preference that the first-to-file court decide the application of that rule, including where the second action should proceed.

Alternatively, this Court should transfer this action to the Eastern District of Texas "for the convenience of the parties and witnesses" and "in the interests of justice" under 28 U.S.C. § 1404(a). Acima's corporate parent, along with most of its corporate officers, is located in the Eastern District of Texas. Key witnesses reside in Texas. Acima's corporate documents are located in Texas, and major corporate business decisions are made there. By contrast, the CFPB—a federal agency based in Washington, D.C.—cannot claim that either Utah or Texas is more convenient.

At a minimum, if this Court declines to transfer this case, it should grant a stay pending disposition of the Texas Action (or that court's determination as to the proper forum). Staying this action pending disposition by the Texas Court serves judicial economy, and a resolution in the Texas Action favorable to Acima could moot the Utah Action.

## FACTUAL BACKGROUND

This case is the latest attempt by the CFPB to expand its authority beyond constitutional and statutory limitations in order to exercise improper investigatory power over substantial aspects of Acima's business.  Acima's business model is simple—it engages in ***lease-to-own transactions***, which have been regulated comprehensively under applicable state lease-to-own laws across the country for many decades.  Acima purchases eligible durable products that an approved consumer selects from a third party retailer (e.g., furniture), and then Acima ***leases*** those products to the consumer under flexible, short-term renewable leases.  ECF 1 ("Compl.") ¶¶ 27–29.  Consumers have the right to exercise early purchase options, renew their short term lease for the specified number of terms to obtain ownership, or terminate their lease at any time without penalty.  Ex. A (Texas Action, ECF 8, Amended Complaint) ¶ 45.

Acima's lease-to-own business model does ***not*** involve providing loans or credit and the governing state laws recognize that lease-to-own transactions are distinct from credit transactions. *Id.* ¶ 12.  Yet the relevant provisions of the statutes that the CFPB has accused Acima of violating— the Consumer Financial Protection Act ("CFPA"), 12 U.S.C. §§ 5481–5603, the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601–1667f, and the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. §§ 1693–1693r—apply only to lenders that offer "credit."  *Id.* ¶¶ 11–12.  Companies like Acima, which do not offer credit, are not covered.  *Id.* ¶ 12.  Indeed, that is how the CFPB itself read these statutes for years—until it suddenly reversed course and targeted Acima and others in the lease-to-own industry.  *Id.* ¶ 103.

Acima cooperated with the CFPB's *ultra vires* investigation, producing millions of pages of documents to the CFPB and incurring substantial legal fees, hoping that once the CFPB understood Acima's business model, it would recognize that Acima was not offering credit.  *Id.* ¶¶

2

60–61. While cooperating, Acima protested the CFPB's lack of statutory or constitutional authority to regulate its lease-to-own transactions in a June 20, 2023 submission to the CFPB. *Id.*

After waiting for almost a year following Acima's submission, on May 15, 2024, the CFPB informed Acima that it intended to bring an enforcement action. Ex. A ¶ 64. Over the next two months, Acima attempted in good faith to negotiate further with the CFPB, but to no avail. *Id.* ¶¶ 65–71. When the CFPB refused to cease enforcement efforts based on statutes that are inapplicable to the company, Acima was forced to seek relief in federal court. On July 22, 2024, Acima filed a declaratory judgment suit in the Eastern District of Texas against the CFPB and Rohit Chopra in his official capacity as the CFPB's Director. *See* Ex. B (Texas Action, ECF 1, Complaint). On August 2, after the CFPB filed the Utah Action against both Acima and its founder and former CEO, Aaron Allred, Acima filed an amended complaint adding Mr. Allred as a plaintiff. *See* Ex. A ¶¶ 34–35. The parties in this case and in the Texas Action are now the same.

The Texas Action raises threshold issues of the CFPB's statutory and constitutional authority that must be resolved before the merits of this Utah Action can be addressed. *See id.* ¶¶ 85–108. Acima and Mr. Allred alleged the CFPB lacks the statutory authority to apply the CFPA, TILA, and EFTA to Acima's lease-to-own services, as the CFPB is trying to do here. *Id.* ¶¶ 86–97. The Texas Action seeks a determination that the CFPB's attempted application of these statutes is unconstitutional for two reasons. *First*, the CFPB has violated Acima's and Mr. Allred's constitutional due process rights by retroactively applying its newly concocted and improper statutory interpretation to Acima's prior conduct. *Id.* ¶¶ 3, 19, 100–04. *Second*, the CFPB funding mechanism is unconstitutional because it does not "draw funds from the combined earnings of the Federal Reserve System," as the Appropriations Clause requires. *CFPB v. Cmty. Fin. Servs. Ass'n of Am., Ltd.*, 601 U.S. 416, 435 (2024); *id.* ¶¶ 3, 20, 105–07.

4887-4197-6805.v1

Instead of responding to Acima's first-filed complaint in Texas, the CFPB filed the Utah Action on July 26, 2024. This Utah Action seeks primarily to enforce against Acima the same three statutes that the complaint in the Texas Action seeks to enforce against Acima. *See* Compl.[1] The statutory and constitutional claims in the Texas Action are foundational and gating; a judgment for Acima in the Texas Action would bar the Utah Action under collateral estoppel.

<u>**ARGUMENT**</u>

**I.    THIS COURT SHOULD TRANSFER THIS ACTION TO THE EASTERN DISTRICT OF TEXAS.**

**A.    The Eastern District of Texas Should Apply the First-To-File Rule.**

This Court should transfer the Utah Action to the Eastern District of Texas to apply the well-established "first-to-file" rule. Under this rule, "when two courts have concurrent jurisdiction, the first court in which jurisdiction attaches has priority to consider the case." *Hospah Coal Co. v. Chaco Energy Co.*, 673 F.2d 1161, 1163 (10th Cir. 1982). The Tenth Circuit accordingly instructs courts to exercise "self-imposed restraint" by declining jurisdiction over cases similar to a first-filed case in another federal venue, in order to promote comity and conserve judicial resources. *O'Hare Int'l Bank v. Lambert*, 459 F.2d 328, 331–32 (10th Cir. 1972). Thus, under the first-to-file rule, a federal district court should abstain from exercising its jurisdiction in deference to a first-filed case in a different federal district court. *Wakaya Perfection, LLC v. Youngevity Int'l, Inc.*, 910 F.3d 1118, 1124 (10th Cir. 2018).

The Tenth Circuit has explained that "the court which first obtains jurisdiction should be allowed to first decide issues of venue." *Hospah*, 673 F.2d at 1164. Consistent with this principle,

---

[1] In this case, the CFPB also has alleged violations of the Fair Credit Reporting Act ("FCRA"). *See* Compl. ¶¶ 8, 160–64, 241–69. The CFPB's statutory authority under the FCRA is not at issue in the Texas Action, but the presence of the FCRA claim in the Utah Action is not a barrier to transfer. It would be highly inefficient to proceed on that claim here while the rest of the CFPB's claims await resolution of the Texas Action because all of CFPB's claims are based on the same, core factual allegations.

"[d]istrict courts within the Tenth Circuit have stated that the preference is for the court of first-filing to decide the application of the first to file rule." *Cherokee Nation v. Nash*, 724 F. Supp. 2d 1159, 1166 (N.D. Okla. 2010) (internal quotation marks and citation omitted); *see also Ironshore Specialty Ins. Co. v. A&A Tank Truck Co.*, 2023 WL 6323076, at *5 (E.D. Okla. Sept. 28, 2023) (similar).

Thus, "[t]he immediate question before the court is not whether jurisdiction and venue are proper in the [second-filed court] or the [first-filed court], but which court should decide those issues." *Ed Tobergte Assocs., Inc. v. Zide Sport Shop of Ohio, Inc.*, 83 F. Supp. 2d 1197, 1199 (D. Kan. 1999). To answer that question, this Court must decide "whether the first to file rule *generally* applies, *i.e.*, whether there is sufficient overlap of parties and issues between the two cases." *Cherokee Nation*, 724 F. Supp. 2d at 1167. Three factors inform this analysis: "(1) chronology of the actions, (2) similarity of the parties, and (3) similarity of the issues." *Shannon's Rainbow, LLC v. Supernova Media, Inc.*, 683 F. Supp. 2d 1261, 1278 (D. Utah 2010). As shown below, all three factors demonstrate substantial overlap between the two cases.

**Chronology of the Actions.** "[D]etermining the chronology of events typically requires only a comparison of the two filing dates," *Wakaya*, 910 F.3d at 1124, and "the date the original complaint is filed controls." *NTCH-West Tenn, Inc. v. ZTE USA, Inc.*, 2014 WL 4444037, at *4 (W.D. Tenn. Sept. 9, 2014). Here, Acima filed its original complaint in the Texas Action on July 22, 2024, four days before the CFPB filed the instant case. Thus, the chronology favors transfer.

**Similarity of the Parties.** "[T]he parties do not need to be identical. Only similarity or 'substantial overlap' is required." *Shannon's Rainbow, LLC*, 683 F. Supp. 2d at 1278–79 (citations omitted). Here, however, the parties *are* identical.[2] Mr. Allred joined the Texas Action just one

---

[2] The only exception is nominal defendant Rohit Chopra (in his official capacity as Director of the CFPB) in the Texas Action. *See* Ex. A ¶ 37.

5

week after the CFPB initiated this suit.  Even considering the Texas Action's original complaint (without Mr. Allred), the result would be the same because CFPB's allegations against Mr. Allred in the Utah Action **run through Acima**—i.e., his purported liability is derivative of Acima's purported liability.  This substantial overlap favors transfer.

**Similarity of the Issues.**  The issues also need not be identical, and where the issues in one action would completely dispose of the corresponding issues in the other action, this factor is met. *See Dumanian v. Schwartz*, 2021 WL 1210033, at *3–5 (D. Col. Mar. 31, 2021) (transferring to the first-filed court where "the same factual background … **could be determinative of both cases**") (emphasis added); *Aerospace Turbine Rotables, Inc. v. 818 Aviation, Inc.*, 2022 WL 4465008, at *4 (D. Kan. Sept. 26, 2022) (transferring where "[b]oth actions arise from the same underlying facts and involve the same core issue").  The constitutional and statutory issues in the Texas Action are not only similar—they are foundational and gating.  They must be resolved first, before the merits of the Utah Action can be considered.  *See Dumanian*, 2021 WL 1210033, at *3–5; *Aerospace Turbine*, 2022 WL 4465008, at *4.

Simultaneous litigation of the Texas Action and Utah Action would require each court to make duplicative—and potentially contrary—findings regarding the applicability of the CFPA, EFTA, and TILA to Acima's business, as well as the constitutionality of the CFPB's actions.  Such duplication of effort, potentially contradictory findings, and significant waste of judicial resources are "the very evils against which the first-filed rule is intended to guard."  *Black Diamond Equip., Ltd. v. Genuine Guide Gear*, 2004 WL 741428, at *3 (D. Utah Mar. 12, 2004) (citing *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997)) (dismissing second-filed case); *see Aerospace Turbine*, 2022 WL 4465008, at *4; *Shannon's Rainbow*, 683 F. Supp. 2d at 1278.

4887-4197-6805.v1

Transferring this case will "avoid piecemeal resolution of issues that call for a uniform result," which is one of the goals the first-to-file rule promotes. *Northface Univ., LLC v. N. Face Apparel Corp.*, 2005 WL 8177239, at *1 (D. Utah Feb. 11, 2005); *see Kerr v. U.S. Dist. Ct. for N. Dist. of California*, 426 U.S. 394, 403 (1976) ("More importantly, particularly in an era of excessively crowded lower court dockets, it is in the interest of the fair and prompt administration of justice to discourage piecemeal litigation."). The fundamental gating issues are already before the Eastern District of Texas. The logical and efficient course is to transfer this case.

**B.      The Eastern District of Texas Is the Proper Forum To Decide the Threshold Statutory and Constitutional Questions.**

Acima and Mr. Allred filed their lawsuit properly in the Eastern District of Texas. Once the CFPB rejected Acima's further attempts at negotiation, Acima had no choice but to exercise its right to seek relief in federal court. Ex. A ¶ 64; *see MCS Music Am., Inc. v. Napster, Inc.*, 2007 WL 726835, at *2 n.4 (M.D. Tenn. Mar. 6, 2007) ("A party has a right to seek declaratory judgment where a reasonable apprehension exists that if it continues an activity it will be sued by another party"); *see also MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128–29 (2007) ("[W]here threatened action by *government* is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat") (emphasis in original).

Acima chose the Eastern District of Texas because of its strong connection to that district. Acima's parent corporation (Upbound Group, Inc.) is headquartered in the district; ten of Acima's thirteen officers (including the CEO, CFO, and General Counsel) and all three of its managers are located there; major corporate decisions pertaining to Acima are made there; critical information technology services managing Acima's corporate documents and records are located there; and relevant discovery, if any, would be suitable there. Ex. A ¶¶ 25–27, 32. Further, courts within the

7

Fifth Circuit are familiar with constitutional challenges to CFPB's funding structure, *see CFPB v. Cmty. Fin. Servs. Ass'n of Am., Ltd.*, 601 U.S. 416 (2024) (on certiorari from the Fifth Circuit).

Because the Eastern District of Texas is the logical choice to resolve Acima's statutory and constitutional claims, it should make the first-to-file determination in the first instance. This Court should transfer the case there.

### C.      In the Alternative, Transfer Is Appropriate Under 28 U.S.C. § 1404(a).

Transfer to the Eastern District of Texas is appropriate for the "convenience of the parties and witnesses" and "the interest of justice." 28 U.S.C. § 1404(a). This Court should consider the following non-exclusive factors under Section 1404(a), including "the plaintiff's choice of forum;" "the accessibility of witnesses and other sources of proof;" "the possibility of the existence of questions arising in the area of conflict of laws;" and "all other considerations of a practical nature that make a trial easy, expeditious and economical." *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991).

These factors favor transfer. Acima chose the Eastern District of Texas because most of Acima's key witnesses are located there; key corporate decision makers are located there; and management, storage, and oversight of relevant documents takes place there. By contrast, neither Utah nor Texas is more convenient for the CFPB. Moreover, there are no questions of Utah law that would favor adjudicating the action in Utah. And keeping this case in Utah while the Texas action proceeds substantially would risk contradictory legal and factual rulings.

## II.     IN THE ALTERNATIVE, THIS COURT SHOULD STAY THIS ACTION PENDING DISPOSITION OF THE TEXAS ACTION.

If this Court declines to transfer this case to the Eastern District of Texas, it should stay the case pending the resolution of the Texas Action. "After determining whether the first to file rule generally applies, courts within the Tenth Circuit have the option of staying the second-filed action

pending the outcome of the first-filed action, rather than immediately transferring the case to the first-filed court." *Cherokee Nation*, 724 F. Supp. 2d at 1171 (citations omitted). Here, as in many cases, "transfer is superior to a stay." *Cherokee Nation*, 724 F. Supp. 2d at 1172. But at minimum, a stay is appropriate because the Texas Action will decide threshold issues that would preclude the CFPB's claims asserted in this case, conserving judicial resources and avoiding inconsistent judicial rulings.[3]

When determining whether to grant a stay, this Court considers: "'(1) whether the stay would promote judicial economy; (2) whether the stay would avoid possible inconsistent results; and (3) whether the stay would not work undue hardship or prejudice against the plaintiff.'" *Wakaya Perfection, LLC v. Youngevity, Int'l, Inc.*, 2019 WL 977916, at *2 (D. Utah Feb. 28, 2019) (citation omitted). All three factors weigh in favor of a stay.

*First*, a stay would promote judicial economy because a ruling in favor of Acima in the Texas Action regarding the scope of the CFPB's statutory and constitutional authority would moot, or substantially moot, this action. *See Fucci v. Bowser*, 2022 WL 1773015, at *3 (D. Utah June 1, 2022). *Second*, because the Texas and Utah actions involve the same questions regarding the scope of the CFPB's statutory authority and the nature of Acima's business, a stay would avoid confusion and possible inconsistent results. *See Bank of Am., N.A. v. Sorensen*, 2013 WL 5295677, at *3 (D. Utah Sept. 19, 2013) (staying an action when issues pending before the court were "depend[ent] on the outcome" of a parallel action). *Third*, a stay would not prejudice the CFPB. The CFPB is free to counter Acima's statutory arguments in the Texas Action, and those questions must be resolved before this Court could consider the merits of the CFPB's enforcement challenge.

---

[3] Generally, transferring the action to the first-filed court most effectively promotes judicial efficiency. *See Dumanian*, 2021 WL 1210033, at *5 (transferring as opposed to staying case); *Hubbard v. Argent Mortg. Co., LLC*, 2016 WL 4537869, at *1, 6 (D. Colo. Aug. 31, 2016) (similar).

9

## CONCLUSION

This Court should transfer this action to the Eastern District of Texas, or, in the alternative, stay proceedings pending resolution of the Texas Action.

Respectfully submitted,

Dated: September 16, 2024

By:   /s/  Bradley J. Bondi
    Bradley J. Bondi*
    PAUL HASTINGS LLP
    2050 M Street NW
    Washington, D.C. 20036
    Telephone: (202) 551-1701
    Facsimile: (202) 551-0201
    *pro hac vice forthcoming

By: /s/  Matthew P. Previn
    Matthew P. Previn*
    PAUL HASTINGS LLP
    200 Park Avenue
    New York, NY 10166
    Telephone: (212) 318-6049
    Facsimile: (212) 303-7049
    *pro hac vice forthcoming

By:   /s/  Benson L. Hathaway, Jr.
    Benson L. Hathaway, Jr.
    Alyssa K. Nielsen
    KIRTON MCCONKIE PC
    50 E. South Temple, Ste. 400
    Salt Lake City, UT 84111
    Telephone: (801) 328-3600
    Facsimile: (801) 321-4893

*Counsel for Defendants Acima Digital, LLC and Acima Holdings, LLC*

10

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 16, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Juelene Smith*

11

***Exhibit Index to Defendants Acima Digital, LLC and Acima Holdings, LLC's Motion to Transfer or, in the Alternative, to Stay***

_____

Exhibit A **-** Texas Action, ECF 8, Amended Complaint

Exhibit B - Texas Action, ECF 1, Complaint