Matthew A. Steward (#7637)
mas@clydesnow.com
Walter A. Romney, Jr. (#7975)
war@clydesnow.com
Nickolas C. Sessions (#18091)
ncs@clydesnow.com
CLYDE SNOW & SESSIONS
201 South Main Street, Suite 2200
Salt Lake City, Utah 84111-2216
Telephone (801) 322-2516

Tierney E. Smith (*pro hac vice*)
TierneySmith@GoodwinLaw.com
GOODWIN PROCTER LLP
1900 N Street NW
Washington, DC 20036
Telephone (202) 346-4019

***Attorneys for Defendant Aaron Allred***

---

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

---

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>Plaintiff,<br><br>v.<br><br>ACIMA HOLDINGS, LLC; ACIMA DIGITAL, LLC (F/K/A ACIMA CREDIT, LLC, D/B/A ACIMA LEASING), and AARON ALLRED,<br><br>Defendants. | **DEFENDANT AARON ALLRED'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**<br><br>Case No. 2:24-CV-00525-DBB<br><br>Judge David Barlow |

## INTRODUCTION

This case depends on what kind of product Acima provides, but the CFPB cannot decide what that product is. Instead, the Complaint (ECF No. 31) ("FAC") asserts that, whatever the case, Acima's marketing was wrong, and Aaron Allred must be held personally responsible. Its inconsistent allegations do not support any claim, however, especially as to Allred. Under one of the CFPB's theories, Acima provides a lease that is the "functional equivalent of" a purchase finance agreement. FAC ⁋ 152. But, contradicting that position, the CFPB argues that Allred knew Acima's marketing was "deceptive" because he once suggested internally at Acima that the lease could be branded as comparable to, but not called, a loan. ECF No. 51 ("Opp.") at 12 (citing FAC ⁋ 40). In an alternative theory, the CFPB argues Acima's lease is actually "credit." FAC ⁋ 150. However, in support, it points to allegations that Allred knew Acima marketed its "90 day cash option" through which consumers paid only a portion of the "Full Term Cost" to terminate their leases (*id*. ⁋⁋ 81-87) – an offer inconsistent with consumers' incurrence of a debt they must pay off. ECF No. 45 ("Acima Br.") at 14. Finally, the CFPB separately argues that Acima's lease *is* a lease that Allred knew was inappropriately "offered" as credit. *Id.* ⁋ 151. But it foils its claim with allegations that Allred knew Acima used "taglines" (e.g., "[t]urn credit denials into approvals") positioning its lease as an option when credit is not available. FAC ⁋ 50.

Rather than supporting the CFPB's claims, the most plausible inference from the Complaint's allegations supports one simple truth: Acima's product is a short-term lease-to-own agreement, and thus an alternative to traditional financing with credit, and was appropriately marketed as such. Congress enumerated specific product categories the CFPB has jurisdiction to regulate, and they do not cover Acima's leases. More specifically as to Allred, the CFPB's

allegations are too sparse, vague, and conclusory to pass muster. This case, and especially the CFPB's claims against Allred, must be dismissed.

## ARGUMENT

This case should be dismissed because it is unconstitutional and unlawful. Further, the CFPB does not have jurisdiction to enforce the CFPA here and has failed to state a claim for relief under the CFPA against Acima – so the CFPA claims, at a minimum, must be dismissed against Allred, too. Acima Br. at 1-18, 23-33; ECF No. 46 ("Allred Br.") at 1-6; ECF No. 56. However, even if the Complaint is not dismissed in whole or part based on any of those reasons, each of the claims against Allred must be dismissed for additional reasons.

### I. The CFPB Fails to State UDAAP Claims Against Allred (Counts I-II and IV-VIII)

The CFPB asks this Court to collapse the standard for individual liability under the CFPA into a single prong test: did Allred have involvement in the affairs of Acima generally? If so, says the CFPB, then he necessarily controlled and participated in all of the wrongful conduct alleged in the Complaint, and therefore he also knew (or constructively knew) about it. Opp. at 4-6, 7 n.3. Besides the fact that the CFPB cannot decide what exactly Acima (and thus Allred) did wrong, pg. 1, *supra*, that single prong test is not the law. The law requires more specificity. Specifically, the CFPB must allege well-pleaded facts to show both that Allred "participated ***directly in the deceptive [or wrongful] acts***" or "had the authority to control" them, <u>and</u> that he had "'***actual knowledge' of the misconduct***, was 'recklessly ***indifferent***' ***to the misconduct***, or 'had an awareness of a high probability' of misconduct 'and ***intentionally avoided learning the truth.'***" Opp. at 3 (emphasis added); Allred Br. at 7 (emphasis added). Despite a multi-year investigation, the Complaint lacks any facts that suggest Allred was "recklessly indifferent" to or "intentionally avoided learning" about particular alleged misconduct of Acima. *Id.* Therefore the question is

whether the Complaint contains factual allegations of Allred's "actual knowledge" of every one of the purportedly deceptive, unfair, or abusive acts—and it does not.

The CFPB also concedes that it does not allege Allred participated directly in each of the purportedly wrongful acts. *E.g.*, Opp. at 3. And even where the Complaint alleges Allred, at unspecified times, played some role in the category of business operations generally related to the purportedly wrongful conduct (e.g., marketing), it lacks allegations that Allred was "directly" involved "in the deceptive [unfair, or abusive] acts" specifically. Moreover, the Complaint's allegations regarding Allred's co-founding of and monetary investment in Acima, and its rote listing of his various titles over time, are inapposite to whether he had the actual authority to control each of the purportedly wrongful acts at the time that each occurred.

A. The CFPB Fails to Allege Facts to Show Allred's "Authority to Control"

The CFPB fails to plead allegations to establish Allred's "authority to control" Acima's conduct at any time relevant to the Complaint. *CFPB v. Gordon*, 819 F.3d 1179, 1193 (9th Cir. 2016). Instead, the Complaint alleges that Acima is a Utah limited liability company (FAC ⁋⁋ 13-15), yet refuses to contend with the fact that, as a matter of law, Acima's "management and conduct" and "activities and affairs" are therefore controlled by its managers or members exclusively. Allred Br. at 8-9. The CFPB contends that the positions Allred held at Acima are relevant to his authority to control the company by alleging those titles (FAC ⁋⁋ 22-23), and that authority to control can be evidenced by whether Allred "assume[d] the duties of a corporate officer." Opp. at 4. But the Complaint is silent as to whether Allred held the position with which the duties of controlling a Utah limited liability company are vested. This point is not esoteric; a

claim is not plausible if the requisite facts to support it are not alleged.[1] *Cf.* Opp. at 5.

But even if the only allegations relevant to Allred's "authority to control" were those about his actions – as opposed to his powers and responsibilities – the CFPB exaggerates and distorts them,[2] and they fall short of demonstrating Allred's authority to set all relevant company policy. *See* Opp. at 4 (arguing that authority to control can be established by evidence that an individual had both "active involvement in business affairs" ***and*** "ma[de] corporate policy"). The closest the Complaint comes to this is its allegation that "Allred was closely involved . . . with setting Acima policy" (FAC ⁋ 25), but that "allegation is conclusory [because] it states an inference without stating underlying facts [and] is devoid of any factual enhancement." *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021). It should thus be disregarded.

B. <u>For Other Reasons, the CFPB Fails to Plead UDAAP Claims Against Allred</u>

Each of the CFPB's UDAAP claims against Allred fail for other reasons, too:

<u>**Count I:**</u> The CFPB now contends that Acima deceived consumers by marketing its 90-day early purchase option with a shorthand title that did not explicitly call-out the leased product's mark-up from its retail price (FAC ⁋ 83), regardless of whether the marketing provided "further explanation" about the lease's terms (*id.* ⁋ 178), and even though the mark-up was disclosed to

---

[1] Nor can allegations of a defendant's authority and responsibility contradict state law. *Peterson v. Martinez*, 707 F.3d 1197, 1206 (10th Cir. 2013) (affirming dismissal of claim regarding defendant's purported responsibility to administer a reciprocity system after taking judicial notice of the Colorado Revised Statutes, which make clear that sheriffs, not individuals in defendant's role, are responsible for administering the system) (internal citation omitted); *cf.* Opp. at 4 n.2.

[2] *Compare, e.g.*, Opp. at 5 ("Allred personally reviewed Acima's merchant marketing and training materials") *with* FAC ¶ 121 ("Allred personally reviewed ***or*** approved ***many of*** Acima Credit's merchant marketing and training materials") (emphasis added), and Opp. at 5 ("Allred received, reviewed, and provided extensive comments on relevant email templates the company used ***to require ACH payments***") *with* FAC ¶¶ 132-133 ("Allred reviewed and provided extensive comments on ***the set of templates that included the emails*** containing [the] language" stating "you agreed ***to provide us with a valid checking account***") (emphasis added).

consumers on the "first page to the lease" since 2018 (*id.* ⁋ 75). *See* Opp. at 8 n.5. The CFPB's logic would render every retailer's advertisement of a "sale" deceptive because the term "sale" does not disclose that the retailer priced the product at a mark-up from its supplier. It is untenable as a UDAAP violation,[3] and provides no basis for an enforcement action seeking civil money penalties from an individual. It is also not "peculiar" to say there is no claim against Allred here because the CFPB did not allege that he "participated directly in" approving, reviewing, or creating advertisements "using phrases like '90 day option,'" or had "actual knowledge" of the purportedly deceptive "context[s]" in which such phrases were used. Opp. at 8; FAC ⁋ 178.

**<u>Count II</u>:** The CFPB concedes the entire basis of its claim against Allred is that email templates containing the following language "were sent to Allred for his review": "Payment by ACH is required for all regular payments, as agreed to in your lease."[4] Opp. at 9 (citing FAC ⁋⁋ 130-131). This allegation, the CFPB argues, renders "plausible" that Allred participated directly in misrepresentations to consumers that their contracts required maintenance of autopay, and that he actually knew such representations were made. *Id.* But the law requires more. "[P]lausibility refers 'to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (internal citation omitted). Here, it is "conceivable" from the CFPB's sparse allegation

[3] *See* Acima Br. at 26-27. It is also unclear why consumers would think a "cash option" (FAC ⁋ 178) is a loan. *See* Acima Br. at 26 (CFPB's claim merely conclusory); pg. 1, *supra*.

[4] The CFPB did not name Allred in Count III, recognizing that the Complaint does not support his liability for Acima's purported "represent[ations] to some consumers . . . that they were required to maintain their prior account [used for autopay] as a 'backup.'" FAC ⁋ 191. Accordingly, to the extent Count II also rests on the same claim (FAC ⁋ 185), the CFPB tacitly concedes that it has not stated such claim against Allred in Count II, either. *See* Allred Br. at 15.

that Allred did more to warrant his individual liability,[5] but the CFPB has not pled allegations to make liability "plausible." *Id*. For example, the CFPB does not allege that Allred *reviewed* the at-issue email templates (but did nothing to prevent them from being used); that he approved use of the templates; that he knew emails using those templates were being sent by others; or that he sent such emails himself. Instead, the CFPB's allegation that certain email templates "were sent to Allred for his review" (FAC ⁋ 131) is "so general that [it] encompass[es] a wide swath of conduct, much of it innocent," including that Allred never reviewed the email templates, or that he reviewed them and rejected their use. *Khalik*, 671 F.3d at 1191 (internal citation omitted).

**Counts IV and V:** The CFPB claims that Acima's representations about consumers' ability to terminate their leases were rendered false by practical "barriers to returns," and that such barriers were unfair. FAC ⁋⁋ 197-198, 203-205. The so-called "barriers" were not unfair, however (Acima Br. at 29-30), and it was true that consumers could end their contracts with Acima at any time by returning the leased goods. *Id*. at 6; FAC ⁋⁋ 88, 197. In any event, the Complaint does not allege that Allred participated directly in or had awareness of any purported "barriers" or misstatements. The CFPB's Opposition *brief* (not its Complaint) baldly asserts that consumer-facing marketing materials "would include representations about returns," and thus Allred knew what those representations were. Opp. at 10. But "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Longhorn Vaccines & Diagnostics, LLC v. Spectrum Sols. LLC*, 564 F. Supp. 3d 1126, 1140 n.83 (D. Utah 2021) (internal citation omitted). In any event, the CFPB does not even argue *what* representations consumer-facing

[5] This allegation is all the CFPB could muster from millions of pages of Allred's emails and other Acima documents, testimony from multiple witnesses (including Allred), etc.

marketing materials supposedly made about returns, or how they were deceptive. Further, while the Opposition brief claims Acima's return "policies *themselves*" – which Allred "authorized or [was] aware of" (FAC ⁋ 107) – "contradict the representations about returns," that is also not in the Complaint. Opp. at 10 (emphasis in original), citing FAC ⁋⁋ 89, 95. For example, the Complaint does not allege that Acima's *policy* was to not perform pick-ups; it alleges Acima stated – to an unalleged audience, at an unalleged time, in an unalleged context – that it did "not have a pickup team in your area." FAC ¶ 91. Nor does the Complaint allege that any donations policy defied representations that the lease could be terminated through a return. *Cf. id*. ¶ 95.

**Count VI:** The Complaint also insufficiently pleads Allred's individual liability for Acima's purported "deceptive and inadequate advertising and training to merchants" and "not sufficient[] monitor[ing]" of their "independent[] advertis[ing]" of the lease. FAC ⁋⁋ 211-212. The Complaint alleges that Allred "reviewed or approved *many of* Acima Credit's merchant marketing and training materials," but it does not allege he reviewed or approved any the CFPB considers deceptive. *Id*. ⁋ 121 (emphasis added). For example, the Complaint does not allege that Allred reviewed, approved, or knew the content of *all* of Acima's merchant "training videos," which only "*sometimes* described consumers as purchasing goods or services from merchants using Acima financing." *Id*. ⁋ 117 (emphasis added). Nor does it allege whether Allred should get credit – pun intended (Allred Br. at 20) – for reviewing and approving a merchant training manual accurately describing the lease as a lease, or a helpful "How to Talk Acima" language guide for merchants.[6] FAC ⁋⁋ 118, 123. The Complaint simply fails to allege what merchant marketing

[6] The Complaint also does not specify which of these materials are purportedly deceptive under its various alternative theories. *See* pg. 1, *supra*; FAC ⁋⁋ 211-213.

materials Allred reviewed or approved at all. And while the Complaint does allege that Allred "had final authority over whether a merchant partner continued to work with Acima" (*id.* ⁋ 128), it does not allege that he was ever called upon to exercise that authority based on a merchant partner's deceptive advertising but refused, or that any deceptive merchant advertising was escalated to Allred at all. Nor does the Complaint allege that Allred failed to exercise any authority he had to remediate deceptive merchant advertising through means other than termination, such as by requiring a merchant to deactivate an advertisement or to undergo additional training.

**Count VII:** The CFPB contends the allegation that Allred was generally "familiar with the Acima Credit mobile application process" (FAC ⁋ 80) – i.e., "a process that has changed multiple times over the years" (*id.* ⁋ 64) – "at the very least . . . [] demonstrate[s] that [he] was recklessly indifferent to the" specific aspects of the process that the CFPB calls "abusive." Opp. at 13-14. The CFPB is wrong. While it is true that individual liability does not require "a unique knowledge that the conduct in question violated the law" (Opp. at 13), awareness of the specific "conduct in question" is required. *See, e.g., id.* at 6 (citing *FTC v. Nudge, LLC*, 2022 WL 2132695, at *49 (D. Utah June 14, 2022) (individual liability requires knowledge of the "misrepresentations")). The CFPB has not alleged such awareness here.[7] Further, courts that have found allegations sufficient to show "reckless indifference" have generally based the finding on the individual's awareness of indicia of wrongdoing. *See, e.g., CFPB v. 1st All. Lending, LLC*, 2022

[7] For example, the Complaint does not allege (because the factual record does not support) that Allred reviewed, approved, or knew about any text inviting consumers to "apply for financing" (FAC ⁋ 57), what pop-ups appeared or didn't appear at various times (*id.* ⁋⁋ 65-67, 70), the content and placement of any "disclosure screens" along the application flow (*id.* ⁋⁋ 59, 61), consumers' options for signing and viewing the full lease after applying through their phone (*id.* ⁋⁋ 68-71, 76), or any other component of the application (or lease execution) process.

WL 993582, at *8 (D. Conn. Mar. 31, 2022) (defendants were "recklessly indifferent to the possibility that its sales employees were acting as mortgage loan originators" where they were put on notice by a compliance officer and internal audit).[8] Here, the CFPB has not alleged any facts from which it could be inferred that Allred had notice that any aspect of the mobile application process "materially interfered [] with consumers' ability to understand" the lease – it just alleges he was generally "familiar" with the process. FAC ⁋⁋ 80, 220.

**Count VIII:** The Complaint shows that Acima accurately marketed its rent-to-own lease as an alternative for consumers who lacked access to credit, because that is what it was. *See* pg. 1; Allred Br. at 19-20; Acima Br. at 33. The CFPB does not state a claim against Allred for marketing "likely to mislead consumers" (FAC ⁋ 226) with allegations about statements made internally at the company or to isolated merchants. *Cf.* Opp. at 14-15.

## II. The CFPB Fails to State A "Substantial Assistance" Claim (Count IX)

The CFPB concedes that to plead "substantial assistance," it must allege facts that show Allred associated himself with Acima's purported CFPA violations and sought by his conduct to make them succeed. Opp. at 16 (citing *CFPB v. Manseth*, 2023 WL 5400235, at *18 (W.D.N.Y. Aug. 22, 2023)). Yet its entire argument is that Allred "associated himself with *Acima* for years" and "sought by his actions to make *Acima* succeed"—not the purportedly wrongful conduct—"by founding it, acting as its leader and, as a leader naturally would, attempting to bring about its

[8] *See also, e.g.*, *FTC v. Am. Fin. Benefits Ctr.*, 324 F. Supp. 3d 1067, 1080-1081 (N.D. Cal. 2018) (allegations sufficient to support "reckless indifference" where "as a liaison to the BBB, [individual defendant] was advised of consumer complaints, including claims that consumers were wrongly led to believe that payments to the Companies were applied toward their loan balances."); *FTC v. Moses*, 913 F.3d 297, 308-309 (2d. Cir. 2019) (finding "evidence of reckless indifference" when individual defendant testified that he began to neglect his managerial duties after he had "agreed to take measures to address the Corporate Defendants' deceptive conduct").

growth and profitability over the years." *Id.* at 17 (cleaned up and emphasis added). That is not enough. The CFPB has not plead facts that plausibly give rise to the inference that Allred wished to bring about the purported violations and make them succeed.[9] It does not allege that Allred created, reviewed, or approved of any (i) deceptive consumer-facing marketing materials, (ii) deceptive communications regarding autopay, (iii) deceptive communications or policies about returns, (iv) deceptive merchant marketing or training materials, or (v) abusive aspect of the mobile application process. This dooms the CFPB's claim. *See SEC v. Arbitrade Ltd.*, 668 F. Supp. 3d 1290, 1307 (S.D. Fla. 2023) ("Absent specificity regarding *which* of the false press releases [defendant] reviewed, the Court cannot conclude that his review of an unidentified release constitutes 'substantial assistance'").[10]

**III. The CFPB Fails to State FCRA Violations Against Allred (Counts XVIII and XIX)**

The CFPB asserts two claims against Allred based on Acima's alleged FCRA violations because "Allred's violations of FCRA . . . in Count XVIII, [also] constitute violations of the CFPA" in Count XIX. FAC ¶¶ 275-285. But now it argues that *both* claims should be treated as violations of the CFPA and that it does not need to meet the well-established standards applicable to FCRA. Opp. at 19 n.11; Allred Br. at 23-24.[11] If the CFPB really intended to assert two claims against Allred under the CFPA based on the same underlying conduct, then that constitutes inappropriate double-dipping and requires dismissal. *Cf. Doe ex rel. Smith v. Intermountain*

---

[9] Nor has the CFPB alleged facts to support an inference that Allred's "conduct [was] highly unreasonable and represents an extreme departure from the standards of ordinary care." Opp. at 15-16 (citing *CFPB v. RD Legal Funding, LLC*, 332 F. Supp. 3d 729, 772 (S.D.N.Y. 2018).

[10] The "substantial assistance" standard derives from federal securities aiding and abetting principles. *See, e.g.*, *RD Legal Funding, LLC*, 332 F. Supp. 3d at 772 (S.D.N.Y. 2018) (citing cases).

[11] While the CFPB challenges the extent to which the cases Allred cites in its brief are analogous, it does not contest that those cases apply a different standard for establishing individual liability under FCRA than the one the CFPB wishes to apply here. Opp. at 20 n.14.

*Healthcare, Inc.*, 2022 WL 180646, at *11 (D. Utah Jan. 20, 2022) (Two claims not "impermissibly duplicative" and subject to dismissal where they "seek different relief based upon a different injury"). In any event, the CFPB cannot plead a FCRA violation against Allred, or a CFPA violation based on his violations of FCRA, without alleging the facts to support his individual liability under the law applicable to FCRA. Under that law, the CFPB has not alleged a violation.[12]

## CONCLUSION

The Court should dismiss the Amended Complaint against Allred with prejudice.

Dated: February 21, 2025

Respectfully submitted,

CLYDE, SNOW & SESSIONS

*/s/ Walter A. Romney*
Matthew A. Steward
Walter A. Romney, Jr.
Thomas A. Brady

GOODWIN PROCTER LLP

/s/ *Tierney E. Smith*
Tierney E. Smith

*Attorneys for Defendant Aaron Allred*

[12] It is not "reasonable to infer" from the CFPB's allegations (FAC ¶¶ 49, 144) that Allred was involved with any prescreened lists that lacked customer authorization or another permissible purpose (Opp. at 19 n.13), much less that he was "was the 'guiding spirit' behind … or the 'central figure' in" using any prescreened lists without a permissible purpose. *McNack v. Smith*, 2015 WL 7302218, at *5 (C.D. Cal. Nov. 16, 2015) (internal citation omitted). *See e.g., Khalik, supra.*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 21, 2025, I caused a true and correct copy of the foregoing to be served upon counsel of record as of this date by electronic filing.

*/s/ Walter A. Romney, Jr.*

4914-0843-5230, v. 1